1
2
3
4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    AKAYSIA PEARSON, et al.,              Case No.  20-cv-05726-CRB

9              Plaintiffs,
                                           **ORDER GRANTING IN PART AND**
10        v.                               **DENYING IN PART MOTION FOR**
                                           **JUDGMENT ON THE PLEADINGS**
11   STATE OF CALIFORNIA, et al.,

12             Defendants.

13        On June 18, 2018, Coltrane Pearson, an inmate housed at the Salinas Valley State

14   Prison, died after correctional officers intervened in an altercation between inmates.  Four

15   of Pearson's children filed 42 U.S.C. § 1983 and state claims against seven correctional

16   officers ("Officer Defendants"), three of their supervisors ("Supervisor Defendants"), and

17   the State of California.  Plaintiffs argue that the Officer Defendants violated Pearson's

18   constitutional rights by using excessive force, failing to protect him from harm, and

19   denying him medical care, and that they violated Plaintiffs' rights by depriving them of a

20   familial relationship.  Plaintiffs argue that the Supervisor Defendants violated Pearson's

21   constitutional rights by ratifying the acts of the officers, failing to train them, and pursuing

22   unconstitutional customs and policies.  Plaintiffs also filed state claims against Defendants

23   for wrongful death (battery and negligence), violation of the Bane Act, and failure to

24   summon medical care.  Defendants moved for judgment on the pleadings.  The Court

25   GRANTS the motion with respect to Claims 2, 3, 5, 6, 7, and 11 and all claims against the

26   Supervisor Defendants.  The Court DENIES the motion with respect to Claims 1, 4, 8, 9,

27   and 10 against the Officer Defendants (excessive force, deprivation of familial

28   relationship, wrongful death, and the Bane Act).  The Court grants leave to amend.

United States District Court
Northern District of California

I.    **BACKGROUND**

    A.    **Facts**

        1.    **The Parties**

At the time of his death on June 18, 2018, Coltrane Pearson was an inmate housed at the Salinas Valley State Prison.  Id. ¶ 29.

Plaintiffs are four of Pearson's children (N.P., Coltrane Jr., K.P., and Akaysia).[1] SAC (dkt. 1) ¶¶ 5-8.  All reside in California and sue in their individual capacities and as successors-in-interest.  Id.  N.P., Pearson's daughter, is a minor who brings her claims through her guardian ad litem Galina Harsh.  Id. ¶ 5.  K.P., Pearson's daughter, is a minor who brings her claims through her guardian ad litem Danielle Singleton.  Id. ¶ 7.  Coltrane Jr. is Pearson's son and is not a minor.  Id. ¶ 6.  Akaysia is Pearson's daughter and is not a minor.  Id. ¶ 8.  Another of Pearson's daughters, Teionni McDaniel-Pearson, filed an initial Government Claim as required by state law but did not bring suit.  See dkt. 21-1 at 30.)

The Officer Defendants, correctional officers at the Prison, are: Otto Aragon, D. Delgadillo, Max Gallegos, Paul Hernandez, Lee Martin, Alfredo Torres-Quezada, and Brian Williams.  SAC ¶ 11, 13-15, 17, 19-20.  The Supervisor Defendants are "managerial, supervisorial, and policymaking employee[s]" of the Prison: Sergeant Marylou Carrillo, Sergeant Valencia Houston, and Lieutenant Jose Ruiz.  Id. ¶ 12, 16, 18.

        2.    **Pearson's Death**

On June 18, 2018, at around 4:25 p.m., "an altercation occurred between [Pearson] and his cellmate wherein [Pearson] was assaulted by his cellmate."  Id. ¶ 30.  "[F]ollowing or during" that altercation, Officer Williams used two bursts of pepper spray on Pearson. Id. ¶ 31.  "Immediately thereafter," Officers Aragon and Williams "pinned [Pearson] up against his cell door, dragged him out of the cell, and forced [him] to the ground in a prone position and put pressure and weight on [his] back and neck."  Id.  Officers Delgadillo, Gallegos, Hernandez, and Martin "applied pressure and weight to various parts of [his]

---

[1] Danielle Singleton also initially filed the same claims, purporting to be Pearson's wife.  SAC ¶ 9. But the parties agree that her claims must be dismissed because she was not married to Pearson at the time of his death.  See Mot. at 4; Opp. at 15 n.2.

United States District Court
Northern District of California

1    body while he was in the prone position, interfering with his ability to breathe." Id.

2    Officers Aragon and Williams handcuffed him and Officers Delgadillo and Martin put him

3    in leg restraints, all while he "was restrained in the prone position by numerous officers."

4    Id.  While Pearson was restrained and in the prone position, Officers Aragon, Delgadillo,

5    Hernandez, Martin, Torres-Quezada, and Williams lifted Pearson by his arms and legs.  Id.

6    These officers then "dropped [Pearson] to the ground, causing [him] to suffer blunt force

7    injury when his head hit the floor."  Id.  Plaintiffs allege that Sgt. Houston, Sgt. Carrillo,

8    and Lt. Ruiz "were all present during the multiple uses of force against [Pearson] and all

9    failed to intervene at any point."  Id. ¶ 32.

10        Pearson became unresponsive at 4:35 p.m.  Id.  He "did not receive any medical

11    treatment or life saving measures until 4:38 p.m."  Id. ¶ 33.  Pearson died at 5:08 p.m.  Id.

12    ¶ 29.

13        **B.    Procedural History**

14        On December 14, 2018, Plaintiffs filed claims for damages against the State and its

15    correctional officers pursuant to California Government Code § 910.4.  McDaniel-Pearson,

16    another of Pearson's children, also filed a claim.  On January 16, 2019, the Government

17    Claims Program mailed a notice of rejection to Plaintiffs' counsel.  On July 16, 2019,

18    Plaintiffs electronically filed their complaint with the Superior Court of California.  See

19    Ex. A (dkt. 24-2).  On July 17, a notice of rejection of the filing was sent to Plaintiffs'

20    counsel via email.  Ex. B (dkt. 24-3).  On July 18, Plaintiffs' counsel located the notice of

21    rejection of the filing in a spam folder and then re-filed the complaint, curing all

22    deficiencies.  Ex. C (dkt. 24-4).[2]  Pearson's other child McDaniel-Pearson "is not a party to

23    the state or federal case."  See Joint Statement (dkt. 22) at 4.

24        After amending several times, Plaintiffs filed the operative Second Amended

25    Complaint on July 15, 2020.  On August 14, 2020, the State removed the case to federal

26    court.  See dkt. 1.  Defendants moved for judgment on the pleadings under Federal Rule of

27

28    _____

[2] The Court takes judicial notice as to these exhibits, which are matters of public record.  See RJN
(dkt. 25); Fed. R. Evid. 201; Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

1    Civil Procedure 12(c).  <u>See</u> Mot. (dkt. 21); Reply (dkt. 26).

2    **II.    LEGAL STANDARD**

3           Because a Rule 12(c) motion for judgment on the pleadings is "functionally

4    identical" to a Rule 12(b)(6) motion to dismiss, the same legal standard applies.  <u>Cafasso v.</u>

5    <u>General Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Under Rule

6    12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may

7    be granted. Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either

8    "a cognizable legal theory" or "sufficient facts alleged" under such a theory.  <u>Godecke v.</u>

9    <u>Kinetic Concepts, Inc.</u>, 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains

10   sufficient factual allegations depends on whether it pleads enough facts to "state a claim to

11   relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell</u>

12   <u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible "when the

13   plaintiff pleads factual content that allows the court to draw the reasonable inference that

14   the defendant is liable for the misconduct alleged."  <u>Id.</u> at 678.  When evaluating a motion

15   to dismiss, the Court "must presume all factual allegations of the complaint to be true and

16   draw all reasonable inferences in favor of the nonmoving party."  <u>Usher v. City of Los</u>

17   <u>Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its

18   entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

19   motions to dismiss, in particular, documents incorporated into the complaint by reference,

20   and matters of which a court may take judicial notice."  <u>Tellabs, Inc. v. Makor Issues &</u>

21   <u>Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

22          If a court dismisses a complaint for failure to state a claim, it should "freely give

23   leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has

24   discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the

25   part of the movant, repeated failure to cure deficiencies by amendment previously allowed,

26   undue prejudice to the opposing party by virtue of allowance of the amendment, [and]

27   futility of amendment."  <u>Leadsinger, Inc. v. BMG Music Pub.</u>, 512 F.3d 522, 532 (9th Cir.

28   2008).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

III.    **DISCUSSION**

    A.    **Section 1983 Claims**

Defendants argue that Plaintiffs have stated 42 U.S.C. § 1983 claims for the violation of Pearson's rights (Claim 1) and their own (Claim 4) only as to the Officer Defendants' alleged dropping of Pearson on the ground, and that Claims 2, 3, 5, 6, and 7 must be dismissed.  The Court agrees that Plaintiffs fail to state Claims 2, 3, 5, 6, and 7 but declines to dismiss any part of Claims 1 and 4.

        1.    **Excessive Force (Claim 1)**

Section 1983 creates a cause of action against a "person who, under color of any [state law], subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A plaintiff must allege facts from which it may be inferred that: (1) he was deprived of a federal right; and (2) the person who committed the alleged violation acted under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  A Section 1983 claim may be brought only by the person whose rights were violated—or, if that person is deceased, by a representative authorized by state law as to survival actions.  42 U.S.C. § 1988; Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998); see Cal. Civ. Proc. Code § 377.30 (authorizing successors-in-interest to bring survival actions).

Plaintiffs adequately pleaded an excessive force claim in their capacity as Pearson's successors-in-interest.  "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Hudson v. McMillian, 503 U.S. 1, 5 (1992).  To determine whether a prison official used excessive force, courts ask "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson, 503 U.S. at 6.  Courts consider (1) the extent of the injury; (2) the need to use the force; (3) the relationship between the need and the amount of force used; (4) the threat "reasonably perceived" by the officials; and (5) "any efforts made to temper the severity" of the force. Id. at 7 (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Defendants argue that Plaintiffs have stated a valid excessive force claim only as to the allegation that the Officer Defendants (except Gallegos) dropped Pearson to the ground.  See Mot. at 7-9, 11-12.  Defendants contend that the Officer Defendants' earlier acts are factually insufficient:

> Plaintiffs allege that (1) the pepper spray used by Defendant Williams once he discovered that Pearson and his cellmate were in the midst of an ongoing physical altercation between them, (2) the efforts to restrain Pearson, and (3) once restrained, the dropping of Pearson by six defendants, are each claims of excessive force. (ECF 1 at 14-15, ¶ 31.) But Plaintiffs have failed to allege facts sufficient to state the first two acts of alleged excessive force.

Although the use of pepper spray alone may not amount to excessive force, e.g., Wallace v. Moberg, 2009 WL 91079, at *4–5 (C.D. Cal. Jan. 10, 2009), the analysis depends on still-unknown facts concerning the extent of the injury, the need to use force, and the threat "reasonably perceived."  The Court declines to slice and dice Paragraph 31 of the complaint.  Plaintiffs have pleaded sufficient allegations for now.

Plaintiffs also plausibly plead that officers' later efforts to restrain Pearson constituted excessive force.  Plaintiffs allege that, "[i]mmediately" after using pepper spray two times on Pearson, Officers Aragon and Williams "pinned [him] up against his cell door, dragged him out of the cell, and forced [him] to the ground in a prone position and put pressure and weight on [his] back and neck."  Id.  Four other officers—Delgadillo, Gallegos, Hernandez, and Martin—"applied pressure and weight to various parts of [his] body while he was in the prone position, interfering with his ability to breathe."  Id.  Defendants are wrong that the phrase "various parts of [his] body" is too vague or conclusory.  See Reply at 7.

Plaintiffs plausibly allege that the Officer Defendants used excessive force, and the Court declines to dismiss any part of the excessive force claim at this time.[3]

---

[3] However, the Court recommends that Plaintiffs amend these allegations to provide all facts that they can.  For example, their complaint does not state Pearson's cause of death, but their opposition brief alleges that he died of asphyxia.  See Mot. at 1.  Plaintiffs should include all factual allegations in the complaint.

### 2. Failure-to-Protect (Claim 2)

Plaintiffs also bring a failure-to-protect claim as Pearson's successors-in-interest, but they do not adequately plead that any of the Defendants failed to protect Pearson.  Mot. at 9.  Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (cleaned up).  An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety."  Id. at 837.

Plaintiffs fall far short of alleging specific facts to support this claim.  They allege only that Pearson's altercation with his cellmate "was the result of Defendants' failure to protect [him] from harm, including Defendants' act of placing [him] in a cell with an inmate whom Defendants knew or should have known presented a risk of harm to [him]."  SAC ¶ 54.  But Plaintiffs set forth no allegations supporting the argument that Defendants had consciousness of any "excessive risk."  Nor do they set forth any allegations as to what actions the Defendants performed or failed to perform.  Finally, Plaintiffs set forth no allegations to indicate that whatever actions they took (or failed to take) had any causal relationship with the eventual harm.  The Court dismisses this claim with leave to amend.

### 3. Delay or Denial of Medical Care (Claim 3)

To set forth an Eighth Amendment claim predicated on the failure to provide medical treatment, Plaintiffs, as Pearson's successors-in-interest, must (1) "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain" and (2) "show the defendant's response to the need was deliberately indifferent."  See Conn v. City of Reno, 591 F.3d 1081, 1094-95 (9th Cir. 2010), vacated in part on other grounds.  Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or . . . in the way in which prison [officials] provide medical care."  Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1081–82 (9th Cir. 2013) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  "Mere 'indifference,' 'negligence,' or 'medical malpractice'" is not sufficient.  Id. at 1081-82

United States District Court
Northern District of California

1   (citations and quotations omitted).  Further, deliberate indifference must be the but-for and

2   proximate cause of the injury.  See Conn, 591 F.3d at 1098 (9th Cir. 2010).

3       Plaintiffs allege that Pearson "did not receive any medical treatment or life saving

4   measures until 4:38 P.M., three minutes after he first became unresponsive and thirteen

5   minutes after Defendants were notified that there was a fight in his cell."  SAC ¶ 64.  But

6   Plaintiffs do not plead that Pearson had a sufficiently "serious medical need" at 4:25 p.m.,

7   when the incident began.  Id. ¶ 31.  The vague statement that Pearson "was assaulted by

8   his cellmate" does not establish a serious medical need.  Plaintiffs have pleaded no details

9   as to Pearson's injuries from the assault or why officers would understand that failure to

10  provide immediate medical care would cause "unnecessary and wanton infliction of pain."

11  Conn, 591 F.3d at 1094-95.  And although Plaintiffs clearly plead that Pearson had serious

12  medical needs by the time he became unresponsive at 4:35 p.m., see SAC ¶ 32, they fail to

13  plead that any official delayed the response or otherwise interfered with treatment, which

14  began three minutes later.  Finally, although Plaintiffs allege "denial of medical care," their

15  complaint suggests that Pearson underwent medical care from 4:38 p.m. until his death at

16  5:08 p.m.  See, e.g., id. ¶ 29.

17      Without more, the three-minute delay between when Pearson became unresponsive

18  and his medical treatment does not plausibly suggest deliberate indifference.  See Lemire,

19  726 F.3d at 1096-1102.  Nor do Plaintiffs allege anything deficient about the care Pearson

20  received from 4:38 p.m. to 5:08 p.m.  Finally, Plaintiffs fail to allege that any alleged

21  deliberate indifference was the but-for cause of any injury.  See Conn, 591 F.3d at 1098.

22  The Court dismisses this claim with leave to amend.

23          **4.      Deprivation of Familial Relationship (Claim 4)**

24      The Fourteenth Amendment prohibits state deprivation of "life, liberty or property,

25  without due process of law."  U.S. Const. amend. XIV.  A "child's interest in her

26  relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty

27  interest" under the Fourteenth Amendment.  Curnow v. Ridgecrest Police, 952 F.2d 321,

28  325 (9th Cir. 1991).  A Section 1983 claim on this ground is brought by the victim's

8

children in their individual capacities.  See id.  A governmental officer's behavior violates substantive due process only when it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998) (citation and quotation omitted).  Deliberate indifference may shock the conscience where an officer was able to engage in actual deliberation, but when he makes a "snap judgment" because of an escalating situation, he must have a "purpose to harm unrelated to legitimate law enforcement objectives."  Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010).

Plaintiffs have pleaded sufficient facts to permit the inference that, while using excessive force, the Officer Defendants acted with "purpose to harm unrelated to legitimate law enforcement objectives."  See id.  Therefore, Plaintiffs' familial relationship claim against the Officer Defendants is sufficiently pleaded to pass the motion to dismiss stage.  The Court dismisses the claim with prejudice to the extent that it is brought in their capacities as Pearson's successor-in-interest.  See Curnow, 952 F.2d at 325.

### 5.    Supervisory Liability (Claims 5-7)

A supervisor is only liable under Section 1983 for constitutional violations of subordinates "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation."  Lemire, 726 F.3d at 1074–75 (quoting Lolli v. Cnty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)).  "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury."  Starr v. Baca, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (citations omitted) (cleaned up).  A supervisor can be liable "for own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  Id. at 1208 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)).

United States District Court
Northern District of California

9

The first theory behind Plaintiffs' Section 1983 claim against the Supervisor Defendants is that the officers' acts were ratified by some "final policymaker." SAC ¶ 84. Whether this claim is brought in Plaintiffs' capacity as successors-in-interest or in their personal capacities, it fails. A ratification claim by a successor-in-interest fails because "§ 1983 does not provide a cause of action on behalf of a deceased person based upon an alleged violation of the decedent's civil rights which occurred after his death." Herd v. Cty. of San Bernardino, 311 F. Supp. 3d 1157, 1169 (C.D. Cal. 2018) (citing Guyton v. Phillips, 606 F.2d 248, 250 (9th Cir. 1979)). Ratification, if any, would necessarily have occurred after Pearson's death. See id. Conversely, if the ratification claim is brought in Plaintiffs' individual capacity and premised on ratification of a violation of their civil rights, it fails because Plaintiffs do not identify a "final policymaker," articulate any facts surrounding the circumstances of ratification, such as when or how it occurred, or plead any causal connection to the constitutional harm. See SAC ¶¶ 81-86.

The second theory behind Plaintiffs' Section 1983 claim against the Supervisor Defendants is that they failed to train the officers. See SAC ¶ 90-95. This theory fails for two reasons. First, Plaintiffs fail to allege any specific facts as to what these alleged failures were. Second, Plaintiffs ascribe the supposedly deficient "training policies" to the "Defendant[] STATE" and do not allege that the Supervisor Defendants had any direct role in any failure to train. Id. ¶¶ 93-95. Indeed, Plaintiffs do not plausibly allege that the Supervisor Defendants were aware of the training status of the seven Officer Defendants, much less that they were responsible for training them. Plaintiffs fail to allege any "culpable action or inaction in the training, supervision, or control of subordinates." Starr, 652 F.3d at 1208.

The third theory behind Plaintiffs' Section 1983 claim against the Supervisor Defendants is that they engaged in unconstitutional customs and policies. They allege ten such policies. See SAC ¶ 103(a)-(j). This theory also fails. First, Plaintiffs fall far short of alleging "a specific policy implemented by the Defendants or a specific event or events instigated by the Defendants that led to" the constitutional injury. Hydrick v. Hunter, 669

United States District Court
Northern District of California

F.3d 937, 942 (9th Cir. 2012).  The policies Plaintiffs allege are extremely vague.  See,

e.g., SAC ¶ 103(a) ("Using excessive force, including excessive deadly force"); id.

¶ 103(i) ("Encouraging, accommodating, or facilitating a 'blue code of silence,' 'blue

shield,' 'blue wall,' 'blue curtain,' 'blue veil,' or simply 'code of silence' . . .").  Second,

Plaintiffs mostly ascribe these policies to the State rather than the Supervisor Defendants.

E.g., id. ¶ 101 ("Supervisor Defendants acted pursuant to an expressly adopted policy or a

longstanding practice or custom of the STATE.").  Third, even if these vague policies can

be ascribed to Supervisor Defendants, Plaintiffs fail to plausibly allege how these policies

directly caused or led to the constitutional injury.

The Court dismisses Claims 5-7 as to supervisory liability with leave to amend.[4]

### B.     State Claims

Of Plaintiffs' state claims, the Court dismisses Claim 11 in its entirety.  The Court

also dismisses Claims 8, 9, and 10 to the extent that they are pleaded against the

Supervisor Defendants.  However, Plaintiffs have sufficiently alleged Claims 8, 9, and 10

against the Officer Defendants.

### 1.     The Government Claims Act

Defendants first argue that the Court must dismiss all of Plaintiffs' state claims

because they failed to file in court within six months of the day California's Government

Claims Board rejected those claims.  The Court disagrees.

Under California's Government Claims Act, "a tort claim against a public entity or

its employees for money or damages be presented to the California Victim Compensation

and Government Claims Board no more than six months after the cause of action accrues."

Lopez v. Cate, 2015 WL 1293450, at *13 (E.D. Cal. Mar. 23, 2015) (citing Cal. Gov't

Code §§ 905.2, 910, 911.2, 945.4, 950–950.2).  The suit must then be commenced within

six months or 182 days, whichever is longer, from the date the notice rejections were

---

[4] The Court also holds that no wrongful-death damages are permitted for any of Plaintiffs' Section 1983 claims, as Section 1983 only permits survival actions.  See Est. of Lopez v. Torres, 105 F. Supp. 3d 1148, 1159 (S.D. Cal. 2015).

deposited in the mail.  Cal. Govt. Code § 945.6(a)(1); <u>Gonzales v. County of Los Angeles</u>, 199 Cal. App. 3d 601, 604 (1988).

However, California courts "exercise their inherent equitable powers to 'soften the harsh impact of technical rules'" through the doctrine of equitable tolling.  <u>Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health</u>, 467 P.3d 1033, 1041 (Cal. 2020) (quoting <u>Addison v. State of California</u>, 578 P.2d 941, 942 (Cal. 1978).  Equitable tolling may be appropriate where there is "(1) timely notice and (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct on the part of the plaintiff."  <u>Id.</u> (cleaned up) (citing <u>Addison</u>, 578 P.2d at 943-44); <u>cf.</u> 3 Witkin, Cal. Proc. 6th, Actions § 750 (2021) (listing circumstances justifying suspension of the limitations period or equitable tolling).  Although "mistake or neglect alone doesn't excuse a late-filed petition," mistake does not foreclose equitable tolling either.  <u>Saint Francis</u>, 467 P.3d at 1042.

Plaintiffs' first non-deficient complaint was filed after the deadline.  The limitations period ended on July 17, 2019.  <u>See</u> Mot. at 4; SAC ¶ 27.  Plaintiffs had filed a putative complaint with the Superior Court on July 16.  <u>See</u> Ex. A (dkt. 24-2).  But the court sent a notice of rejection on July 17, <u>see</u> Ex. B (dkt. 24-3), and Plaintiffs did not see this email until July 18, at which point they immediately refiled and cured the deficiencies.  <u>See</u> Ex. C (dkt. 24-4).

Plaintiffs argue that equitable tolling is appropriate because there was (1) timely notice to the defendant, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct on the part of the plaintiff.  <u>See</u> 467 P.3d at 1041.  For example, equitable tolling was appropriate in <u>Addison</u> because the plaintiff had pursued his remedy in federal court during the limitations period, even though that court was later found to have lacked subject matter jurisdiction.  578 P.2d at 943.  Defendants argue that <u>Addison</u> is inapposite because the complaint there was timely filed in <u>a</u> court (although in one that turned out to lack jurisdiction), while the complaint here was not correctly filed in any court (although it was incorrectly filed in one).  Defendants' argument elevates form over substance.  Equitable tolling has no "rigid requirement" of a successful filing in a different forum.

United States District Court
Northern District of California

1  Saint Francis, 467 P.3d at 1041.

2      The Court concludes that Plaintiffs' state claims may be equitably tolled.

3  Defendants were not prejudiced in their ability to prepare their case, and Plaintiffs

4  reasonably attempted in good faith to file in the period and immediately remedied their

5  error.  Equitable tolling exists to "soften[] the harsh impact of technical rules," and the

6  California Legislature has since seen fit to excuse the sort of mistake made here.  See Cal.

7  Civ. Proc. Code § 1010.6(b)(4)(E).[5]

8          **2.      Wrongful Death (Claims 8-9)**

9              **a.      Failure to Join**

10      Defendants also argue that the Court must join Pearson's adult child McDaniel-

11  Pearson.[6]  Mot. at 4-6; see Fed. R. Civ. Proc. 19.  Although the Court finds that McDaniel-

12  Pearson is a "required" party for adjudicating the wrongful death claim, joinder is

13  infeasible and she is not "indispensable" under Rule 19.  Because McDaniel-Pearson did

14  not file a lawsuit within six months of her rejected government claim, see Joint Statement

15  at 4, she cannot recover and need not be joined.

16      The first step of the Rule 19 analysis requires a determination of whether

17  McDaniel-Pearson is "necessary."  See EEOC v. Peabody W. Coal Co., 400 F.3d 774, 779

18  _____

19  [5] Section 1010.6(b)(4)(E), which went into effect in 2021, tolls the statute of limitations when the
20  clerk of the court initially rejects a complaint due to clerical errors but eventually accepts it.  If this
    provision were in effect at the time, it might apply to Plaintiffs' complaint.  However, because the
21  provision does not purport to be retroactive, it does not apply to Plaintiffs' filings in 2019.  See
    Ex. C (dkt. 26-1) (statute as it existed in 2019); Evangelatos v. Superior Ct., 753 P.2d 585 (Cal.
22  1988).
        The Court disagrees with Plaintiffs' contention that Defendants waived this argument by
23  failing to include it in their responses to earlier amended complaints in state court.  See dkt. 24-5
    (earlier brief in state court without this argument).  Plaintiffs provide no legal authority for their
24  view of waiver, and it is undisputed that Defendants included the argument in their first responsive
25  pleading to this court.  See Ans. (dkt. 7) at 13.
    [6] Defendants do not clearly state for which of the claims they believe McDaniel-Pearson is a
26  required party, but the Court finds that, to the extent the argument applies, it applies only to the
    wrongful death claim.  Although the doctrine is not entirely clear, no court has held that all
27  successors-in-interest are "required" when courts adjudicate Section 1983 claims.  See Est. of
    Mendez v. City of Ceres, 390 F. Supp. 3d 1189, 1201-03 (E.D. Cal. 2019).  Nor are all successors-
28  in-interest required for Plaintiffs' other state-law claims.  See id.

(9th Cir. 2005).  Under California law, wrongful death actions are joint and indivisible amongst the decedent's heirs.  Ruttenberg v. Ruttenberg, 53 Cal. App. 4th 801, 807 (1997).  As a known heir, McDaniel-Pearson is therefore a necessary party under state law.  See id. at 808.

At the second step, however, the Court concludes that joinder of McDaniel-Pearson is not feasible.  Joinder is not feasible "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."  Peabody, 400 F.3d at 779.  Although McDaniel-Pearson timely filed a government claim, see dkt. 21-1 at 30, she did not file a lawsuit within the six-month period discussed above.  See Opp. at 6-7; Joint Statement at 4.  Consequently, she lacks a wrongful-death claim and the court cannot hear it.  See A.D. v. California Highway Patrol, 2009 WL 733872, at *5 (N.D. Cal. Mar. 17, 2009) (finding that joinder was infeasible because the missing heir had failed to file a government claim); Est. of Burkhart v. United States, 2008 WL 4067429, at *7–8 (N.D. Cal. Aug. 26, 2008) (same).

At the third step of the Rule 19 analysis, the Court concludes that McDaniel-Pearson is not an "indispensable" party.  Peabody, 400 F.3d at 779-80.  California courts hold that nonjoined heirs are not indispensable.  See Ruttenberg, 53 Cal. 4th at 807.  This court concludes the same.  Because she lacks a claim, "any judgment rendered in [her] absence could not prejudice [her]," nor will "[her] absence . . . prevent the Court from awarding meaningful relief to the present parties."  A.D., 2009 WL 733872, at *5.  Therefore, the Court concludes that joinder is unnecessary.

**b.      Sufficiency of Allegations**

For the reasons described in the Court's analysis of the Section 1983 excessive force claim (Claim 1), the Court concludes that Plaintiffs have sufficiently alleged their state claims for battery and negligence against the Officer Defendants.  However, Plaintiffs have insufficiently pleaded that the Supervisor Defendants failed to fulfill any duty or that any purported failure had a causal relationship with the harm suffered by Pearson.  Therefore, with respect to the Supervisor Defendants, Claims 8 and 9 are dismissed with

United States District Court
Northern District of California

leave to amend.

### 3.    The Bane Act (Claim 10)

The Court concludes that Plaintiffs have sufficiently pleaded a claim under the Bane Act in their capacity as Pearson's successors-in-interest.

Section 52.1 of the Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1).  Although the Bane Act does not require the "threat, intimidation, or coercion" to be independent from the constitutional violation, it requires specific intent to violate the victim's rights.  See Reese v. Cty. of Sacramento, 888 F.3d 1030, 1043-44 (9th Cir. 2018).  In an excessive force claim, a defendant must intend not only the force, but also its unreasonableness.  See id. at 1045.  A plaintiff only has a cause of action under the Bane Act in her capacity as a successor-in-interest.  See Medrano v. Kern Cty. Sheriff's Officer, 921 F. Supp. 2d 1009, 1016 (E.D. Cal. 2013).

Because Plaintiffs' allegations underlying their excessive force claim may give rise to the inference that the Officer Defendants had specific intent, SAC ¶¶ 31, 123, the Court concludes that Plaintiffs have sufficiently pleaded their Bane Act claim.  The claim is dismissed with respect to the Supervisor Defendants.

### 4.    Failure to Summon Medical Care (Claim 11)

Under California law, a public employee "is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."  Cal. Gov't Code § 845.6.  This claim is insufficiently pleaded for the reasons the Court explained above when it analyzed the Section 1983 claim for unconstitutional delay of medical care (Claim 3).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motion with respect to Claims 2, 3, 5, 6, 7, and 11, and DENIES it with respect to Claims 1, 4, 8, 9, and 10.  Plaintiffs have sufficiently stated these remaining claims against the Officer Defendants only.  Except

United States District Court
Northern District of California

15

where otherwise noted, the Court grants Plaintiffs leave to amend.  They may file an amended complaint within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: February 8, 2022



CHARLES R. BREYER
United States District Judge